# *EXHIBIT B*

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA


AMBER D. HALL,

      Plaintiff,


v.                                  Civil Action No. 18-C-526
                                        Honorable Tod J. Kaufman


GESTAMP WEST VIRGINIA, LLC,
BARRY HOLSTEIN, KENNETH
SUPRENANT, and SCOTT HUGHES,

      Defendants.



**VOLUME II**



        The continuing deposition of **AMBER D. HALL** was taken under the West Virginia Rules of Civil Procedure in the above-entitled action before Lisa V. Miller, a Certified Court Reporter and Notary Public within and for the State of West Virginia, on the 6th day of February 2020, commencing at 9:47 a.m., at the law offices of Hendrickson & Long, PLLC, 214 Capitol Street, Charleston, West Virginia, pursuant to notice.


**MOUNTAIN STATE REPORTING, LLC**
(304) 727-8590

1    myself and Summer Bennett.

2           Q     And who is Summer Bennett?

3           A     Summer Bennett is a friend of mine from

4    Oregon.

5           Q     Okay.  Let's turn back to Exhibit 30, which

6    is the Complaint.  Turn to Paragraph 72 on Page 9, where the

7    9 is at the top?

8           A     (Witness complies.)

9           Q     Paragraph 72 says that your "termination was

10   due to Plaintiff's disability and/or gender, as a violation

11   of the West Virginia Human Rights Act."

12          A     Yes.

13          Q     So you're alleging that your termination was

14   due to your disability and due to gender?

15          A     I am not alleging that that is the only

16   reason, no.  That is one of the reasons.

17          Q     Okay.  And so you are making claims of

18   disability discrimination and gender discrimination under

19   the West Virginia Human Rights Act?

20          A     Yes.

21          Q     Are you making any other claims in this

22   action?

23          A     All my claims are in this document.

24          Q     Yeah, and I'm trying to see what other claims

1   you're making.

2          A     I'll read it for you.  (Witness reads

3   document.)   71 states "Plaintiff was illegally targeted for

4   termination due to her medical leave and issues with PTSD

5   anxiety and her gender, female," and also the one on 72.

6          Q     So are you alleging that you were retaliated

7   against for taking leave under the Family Medical Leave Act?

8          A     Can you say that one more time?  I was

9   reading.

10         Q     Are you alleging in Paragraph 71 that you

11   were retaliated against for taking leave under the Family

12   Medical Leave Act?

13         A     Yes.

14         Q     Other than disability discrimination,

15   gender discrimination, and FMLA retaliation, are there any

16   other claims you're making in this lawsuit?

17         A     Sexual harassment.

18         Q     Any other claims you're making other than -

19         A     May I read this?

20         Q     Sure.

21         A     (Witness reads document.)  So the question

22   was?

23         Q     We've talked about gender discrimination,

24   disability discrimination, FMLA retaliation, and sexual

1    harassment.  Are there any other claims that you are making

2    in this lawsuit?

3                    MR. HOOSIER:  Object to the form, but you can

4    answer it to the extent you can.

5                    THE WITNESS:  I'm having a hard time here.

6                    BY MR. FLOWERS:

7            Q      Are there any other reasons you're claiming

8    you were terminated, discriminatory reasons, retaliatory

9    reasons?

10           A      For retaliatory reasons.

11           Q      This is your deposition, so this is your

12   Complaint.  I'm just trying to figure out what your claims

13   are.

14           A      My claims are for what you said already, the

15   sexual harassment, the harassment.

16           Q      So the sexual harassment, are you saying

17   there's a different claim for harassment other than sexual

18   harassment in your Complaint?

19           A      It's all together.

20           Q      Okay.  So it's all sexual harassment?  Are

21   you claiming harassment based on any category other than sex?

22           A      Yes.  Yes, I am.

23           Q      Okay.  So you're saying there was harassment

24   based on factors other than sex?

1         A     Yes.

2         Q     Okay.  So sexual harassment, harassment,

3  disability discrimination –

4         A     Hostile working environment.

5         Q     Hostile work environment based on what?

6         A     I'm really having a hard time understanding

7  what question you're asking me because –

8         Q     You know you're bringing claims in this

9  lawsuit, right?

10        A     Yes.

11        Q     And I'm trying to figure out what claims

12  those are.

13        A     Okay.  So do you need examples?

14        Q     No, I just need – like you're saying that

15  you're bringing a sexual harassment complaint.  That means

16  you were harassed on the basis of sex.

17        A     Yes.

18        Q     You're bringing discrimination based on

19  disability and gender claims, that you were discriminated

20  against based on disability and gender?

21        A     Yes.

22        Q     You said you were bringing an FMLA

23  retaliation claim, which that means you were retaliated

24  against because you took FMLA leave?

1          A     Yes.

2          Q     So I'm trying to figure out, are there any

3    other claims upon which you're bringing this action?

4          A     So harassment, hostile working environment.

5    And when you say based on what, are you looking for an example?

6    That's what I'm asking you.

7          Q     You're saying a hostile work environment,

8    just in general, not based – in addition to your sexual

9    harassment claim, you're bringing a claim for general hostile

10   work environment?

11         A     Yes.

12         Q     Okay.

13         A     And what I mean is that the environment that

14   I was working in was so hostile that it affected me physically,

15   it affected me mentally, it affected me so much to the point

16   that it got so bad that I ended up leaving in an ambulance.

17         Q     Okay.  And I'll get into detail about each

18   of these claims.  I'm just trying at this point to see what

19   the claims are, and then I'll go back over them.

20         A     Okay.

21         Q     So have we covered all of the claims you're

22   bringing in this action?

23         A     I believe so right now.

24         Q     Okay.

```
1              A      And pay disparagement.

2              Q      So turn in the Complaint to Paragraph 75.

3              A      (Witness complies.)

4              Q      Do you see Paragraph 75?

5              A      Yes.

6              Q      It says, "Plaintiff reserves right to amend

7       to allege claims for violations of public policy, namely

8       relation to plaintiff's complaints, her taking leave to

9       address medical concerns, complaints of sexual harassment,

10      and violations of the Equal Pay Act."

11                    So where it says you reserve the right to

12      amend, you're saying you are claiming a violation of pay

13      disparity?

14             A      Yes.

15             Q      Okay.  Anything else?

16             A      I think that's it at this time.  I think

17      that's the best I can answer that question right now.

18             Q      Okay.  So talking about your termination for

19      taking medical leave claim, did anyone tell you, you were

20      being terminated because you took medical leave?

21                    MR. HOOSIER:  Object to form.

22                    THE WITNESS:  No.

23                    BY MR. FLOWERS:

24             Q      Did anyone tell you anything that would lead
```

```
 1      IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA
 2
 3
 4
 5
 6
 7  STATE OF WEST VIRGINIA,
 8
 9  COUNTY OF KANAWHA, to wit:
10
11

12

13          I, Lisa V. Miller, a Certified Court Reporter and

14  Notary Public within and for the county and state aforesaid,

15  duly Commissioned and qualified, do hereby certify that the

16  foregoing deposition of **AMBER DEE HALL** was taken by and before

17  me at the time and place and for the purpose specified in the

18  caption hereof, the said witness having been first duly sworn

19  by me to testify the whole truth and nothing but the truth

20  concerning the matter in controversy.

21          I do further certify that the said deposition was

22  transcribed under my direction and supervision and that this

23  deposition is a true record of the testimony given by the

24  witness.

25          I do further certify that I am not connected by blood

26  or marriage with any of the parties in this matter, am not a
```

1    relative or employee or attorney or counsel of any of the

2    parties, nor am I a relative or employee of such attorney or

3    counsel or financially interested in the matter or interested

4    directly or indirectly in the matter in controversy.

5         Given under my hand and official seal this 20th day of

6    February 2020.

7
8
9                         Certified Court Reporter
10                           Notary Public
11

12

13        My Commission expires October 27, 2020.

14

 **CT Corporation**

**Service of Process Transmittal**
05/03/2018
CT Log Number 533275283

**TO:** Gene T Price, Partner
Burr Forman LLP
420 20th St N Ste 3400
Birmingham, AL 35203-3284

**RE:** **Process Served in West Virginia**

**FOR:** Gestamp West Virginia, LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | AMBER D. HALL, Pltf. vs. GESTAMP WEST VIRGINIA, LLC, et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Attachment(s), Complaint |
| **COURT/AGENCY:** | Kanawha County Circuit Court, WV |
| | Case # 18C526 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination - On April 25, 2017 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Charleston, WV |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 05/03/2018 postmarked on 05/01/2018 |
| **JURISDICTION SERVED:** | West Virginia |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service of this summons upon you, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | D. Adrian Hoosier, II |
| | Lord Hoosier PLLC |
| | 225 Hale Street |
| | Charleston, WV 25301 |
| | (304) 345-8030 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780105953241 |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 5400 D Big Tyler Road |
| | Charleston, WV 25313 |
| **TELEPHONE:** | 302-658-7581 |

Page 1 of  1 / CG

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



U.S.POSTAGE >> PITNEY BOWES

ZIP 25311   $ 006.58⁰
02 4W
0000336734 MAY 01 2018

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

**USPS CERTIFIED MAIL™**



9214 8901 1251 3410 0002 3114 73

GESTAMP WEST VIRGINIA LLC
C. T. Corporation System
5400 D Big Tyler Road
CHARLESTON, WV 25313

**Control Number:** 218590

**Defendant:** GESTAMP WEST VIRGINIA LLC
5400 D Big Tyler Road
CHARLESTON, WV 25313 US

**Agent:** C. T. Corporation System

**County:** Kanawha

**Civil Action:** 18-C-526

**Certified Number:** 92148901125134100002311473

**Service Date:** 4/30/2018

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office.***

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

AMBER D. HALL,

      Plaintiff,

v.

                                     Civil Action: *18-C-526*
                                     Judge: *Kaufman*

GESTAMP WEST VIRGINIA, LLC
BARRY HOLSTEIN
KENNETH SUPRENANT
& SCOTT HUGHES,

      Defendants.

### SUMMONS

TO:   GESTAMP WEST VIRGINIA, LLC
       c/o CT Corporation System
       5400 D Big Tyler Rd.
       Charleston, WV 25313

     IN THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon **Adrian Hoosier, II, Plaintiff's attorney, whose address is Lord Hoosier, PLLC, 225 Hale Street, Charleston, WV 25301**, an answer, including any related counterclaim you may have, to the complaint filed against you in the above styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred for asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

Dated: _____ 4/18/18

**Cathy S. Gatson, Clerk**

Circuit Clerk

By Clyf

IN THE CIRCUIT COURT OF _____ **KANAWHA** _____ COUNTY, WEST-VIRGINIA

**FILED**

CIVIL CASE INFORMATION STATEMENT
(Civil Cases Other than Domestic Relations)

*2018 APR 18  A 10: 09*

**I. CASE STYLE:**

**Plaintiff(s)**

AMBER D. HALL

_____

_____

_____

vs.

**Defendant(s)**

GESTAMP WEST VIRGINIA, LLC
*Name*

C/O CT CORP SYSTEM 5400 D BIG TYLER RD.
*Street Address*

CHARLESTON, WV 25313
*City, State, Zip Code*

Case No. *18-C-526*

Judge: *Kaufman*

| **Days to Answer** | **Type of Service** |
|---|---|
| 30 | SOS |

**II. TYPE OF CASE:**

- [✓] General Civil
- [ ] Mass Litigation *[As defined in T.C.R. 26.04(a)]*
  - [ ] Asbestos
  - [ ] FELA Asbestos
  - [ ] Other:_____
- [ ] Habeas Corpus/Other Extraordinary Writ
- [ ] Other:_____

- [ ] Adoption
- [ ] Administrative Agency Appeal
- [ ] Civil Appeal from Magistrate Court
- [ ] Miscellaneous Civil Petition
- [ ] Mental Hygiene
- [ ] Guardianship
- [ ] Medical Malpractice

**III. JURY DEMAND:** [✓] Yes [ ] No  CASE WILL BE READY FOR TRIAL BY (Month/Year): 04 / 2020

**IV. DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS?**

[ ] Yes [✓] No

**IF YES, PLEASE SPECIFY:**
- [ ] Wheelchair accessible hearing room and other facilites
- [ ] Reader or other auxiliary aid for the visually impaired
- [ ] Interpreter or other auxiliary aid for the deaf and hard of hearing
- [ ] Spokesperson or other auxiliary aid for the speech impaired
- [ ] Foreign language interpreter-specify language: _____
- [ ] Other: _____

| | |
|---|---|
| Attorney Name: D. ADRIAN HOOSIER, II | **Representing:** |
| Firm: LORD HOOSIER, PLLC | [✓] Plaintiff [ ] Defendant |
| Address: 225 HALE ST. CHARLESTON, WV 25301 | [ ] Cross-Defendant [ ] Cross-Complainant |
| Telephone: (304) 345-8030 | [ ] 3rd-Party Plaintiff [ ] 3rd-Party Defendant |

[ ] **Proceeding Without an Attorney**

Original and ___4___ copies of complaint enclosed/attached.

Dated: 04 / 18 / 2018    Signature: _____

SCA-C-100:  Civil Case Information Statement (Other than Domestic Relations)        Revision Date: 12/2015

**Plaintiff:** AMBER D. HALL _____ , *et al*   **Case Number:** _____
**vs.**
**Defendant:** GESTAMP WEST VIRGINIA, LLC _____ , *et al*

## CIVIL CASE INFORMATION STATEMENT
## DEFENDANT(S) CONTINUATION PAGE

BARRY HOLSTEIN
**Defendant's Name**

3100 MacCorkle Ave. Building 307
**Street Address**                                  **Days to Answer:** __30__

South Charleston, WV 25303
**City, State, Zip Code**                           **Type of Service:** PERSONAL/SHERIFF

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KENNETH SUPRENANT
**Defendant's Name**

42 Bridlewood Rd.
**Street Address**                                  **Days to Answer:** __30__

Charleston, WV 25314
**City, State, Zip Code**                           **Type of Service:** PERSONAL/SHERIFF

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SCOTT HUGHES
**Defendant's Name**

3100 McCorkle Ave. Building 307
**Street Address**                                  **Days to Answer:** __30__

South Charleston, WV 25303
**City, State, Zip Code**                           **Type of Service:** PERSONAL/SHERIFF

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Defendant's Name**

**Street Address**                                  **Days to Answer:** _____

**City, State, Zip Code**                           **Type of Service:** _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Defendant's Name**

**Street Address**                                  **Days to Answer:** _____

**City, State, Zip Code**                           **Type of Service:** _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Defendant's Name**

**Street Address**                                  **Days to Answer:** _____

**City, State, Zip Code**                           **Type of Service:** _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Defendant's Name**

**Street Address**                                  **Days to Answer:** _____

**City, State, Zip Code**                           **Type of Service:** _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

1

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

*FILED*

2018 APR 18 A 10: 09

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

AMBER D. HALL,

      Plaintiff,

v.

                             Civil Action No. 17-C- 526

                             Judge:

GESTAMP WEST VIRGINIA, LLC,          Jury Trial Demanded  *Kaufman*
BARRY HOLSTEIN,
KENNETH SUPRENANT,
& SCOTT HUGHES,

      Defendants.

## COMPLAINT

    1.    Plaintiff was employed at Gestamp's facility in South Charleston, West Virginia from February 2014 to April 25, 2017.

    2.    On December 3, 2016, Plaintiff had an anxiety attack at work and was taken out of the building in an ambulance.

    3.    After that, Plaintiff's doctor placed her on FMLA from December 3 to December 19, 2016, in order to get treatment for her acute anxiety stemming from her PTSD.

    4.    Plaintiff continued to receive medical treatment for anxiety from her PTSD after she returned from FMLA.

    5.    Plaintiff suffered another anxiety attack at work on January 17, 2017.

    6.    Plaintiff's doctors placed her on FMLA again from January 17 until March 20, 2017. She continued to receive treatment and therapy for her PTSD anxiety during this time.

2

7.      Plaintiff called Scott Hughes, the HR Department Manager at Gestamp, to inform him that she was not sure when she would be released to come back to work.

8.      Hughes informed Plaintiff that Gestamp's policies had changed, and that she had three months of FMLA to use in 2017.

9.      Hughes also informed Plaintiff that she qualified for short-term disability, which would allow her to get paychecks at her base pay rate of just over $1600 per two weeks while she recovered.

10.     Plaintiff, on Hughes' advice, went on short-term disability concurrently with her FMLA leave, beginning on January 17, 2017.

11.     On March 15, 2017, Plaintiff called Scott Hughes to inform him that she was requesting to return to work, that she was having her therapist agree to release her back to work, and that her psychiatrist would sign off as soon as her therapist did.

12.     Hughes claimed to have sent a certified letter to Plaintiff to let her know she had used up her FMLA leave, telling her that he had sent it weeks before this March 15 phone call.

13.     During this call, Plaintiff inquired why Hughes was telling her that her FMLA was used up given that in January, he told her she had three months of FMLA to use as needed.

14.     Hughes denied having told Plaintiff she had three months of FMLA leave.

15.     Plaintiff received notice of this letter on March 15, the same day as her call with Hughes, when the postal service left her a notice that she had missed them and she would need to come sign for the letter at the post office.

3

16.     Plaintiff left short-term disability on March 17, as she returned to work on Monday, March 20, 2017.

17.     During the final three weeks before Plaintiff returned, her team leader (subordinate) Aaron Lambert was covering her position at Gestamp as a group leader (supervisor).

18.     When Plaintiff returned to work, she approached her new supervisor Kenneth Suprenant, and asked him how her job duties had changed since Gestamp had created the supervisor position to manage the group leaders.

19.     Suprenant informed Plaintiff that her duties had not changed at all.

20.     While Plaintiff was out of the plant on FMLA, her desk was in use by team leader Aaron Lambert, while he filled in for her.

21.     Plaintiff asked about getting her desk back, and Suprenant told Plaintiff that she was not permitted to have her desk back until Rusty Mossberger came to the area and okayed it.

22.     When Plaintiff returned, the Business Operating System boards near the lobby of the plant listed Aaron Lambert's name under Plaintiff's.

23.     It was not standard practice for team leaders at Gestamp to take over the jobs of group leaders in perpetuity without a promotion, as group leaders are above team leaders in terms of pay scale and responsibilities.

24.     Suprenant treated Lambert as Plaintiff's superior after her return to work at Gestamp, despite the fact Lambert should have been reporting directly to Plaintiff.

4

25.    Plaintiff was one of only two female group leaders at Gestamp's South Charleston facility, out of twelve group leaders in the facility.

26.    On April 11, 2017, Plaintiff was on the line speaking with her team leaders Rhonda Holbert, Chuck Pennington, and Chris Groom.

27.    Groom told Plaintiff that she was looking good.

28.    Plaintiff was relating a story about working out at the gym when Erica Haynes approached the group and asked why everyone was laughing.

29.    Plaintiff began relating the story to Haynes as well, leading to Plaintiff and Haynes exchanging positive comments about each others' posteriors.

30.    Haynes then made a comment praising Plaintiff's breasts.

31.    Plaintiff reacted to this comment with further joking, understanding the interaction to be lighthearted and humorous.

32.    The parties parted ways without complaint.

33.    Soon thereafter, Haynes submitted a request for absence to the Plaintiff for approval. Haynes submitted the request for absence on 3/28/2017- the request was denied- Haynes was told she could go to Suprenant to have it approved- she spent the day calling Plaintiff a "Bitch" down the line.

34.    Plaintiff denied the request because it would have violated company rules by having over ten percent of her workers out on leave for that day.

35.    Plaintiff advised Haynes that if she needed that day off, she could go to Suprenant and get him to approve it, as Plaintiff did not have the authority to approve leave which would violate Gestamp's ten percent headcount rule.

5

36.     Haynes was incensed by this refusal and began complaining about Plaintiff to all who would listen for the rest of that day, walking the assembly line and referring to Plaintiff as "a bitch."

37.     Haynes – to the surprise of everyone, including Plaintiff - had filed a complaint of sexual harassment against Plaintiff on April 21, 2017.

38.     Haynes had been moved out of Plaintiff's area at the plant on April 20, 2017.

39.     Multiple plant personnel told Plaintiff that Kenneth Suprenant had coached Erica Haynes  into filing a sexual harassment complaint against Plaintiff.

40.     Suprenant and other plant management personnel allowed Plaintiff to continue to supervise Haynes during the weekend, from April 22 to 23, 2017.

41.     Neither Suprenant nor any·other Gestamp management personnel had yet approached the Plaintiff to reprimand her over the sexual harassment complaint.

42.     Neither Suprenant nor any other Gestamp management personnel had yet approached the Plaintiff to inform her of the complaint. Plaintiff was not placed on leave or prevented from coming into contact with the alleged victim.

43.     Neither Suprenant nor any other Gestamp management personnel had yet approached the Plaintiff to reassign her to another area where she would not be overseeing the subject of her alleged harassment.  If fact no changes were made at all. And Plaintiff was forced to cover an undesirable, and lengthy shift before she was fired.

44.     On April 24, 2017, Rhonda Holbert came to Plaintiff and informed her that Erica Haynes had filed a complaint of sexual harassment against Plaintiff.

6

45.     Plaintiff confronted Suprenant on April 24, 2017, about the sexual harassment complaint against her, and together they had a discussion about it in Scott Hughes' office.

46..    In response to Plaintiff's attempts to address the sexual harassment complaint, Suprenant disdainfully dismissed the Plaintiff, saying "Why would I discuss this with you?" Plaintiff then was approached by Suprenant in his office directly and alone - the conversation was moved to Scott Hughes office, after Suprenant said, "let's take this to HR." Once the parties were in "HR" others joined.

47.     In attendance for this discussion was Kenneth Suprenant, Rusty Mossberger, Scott Hughes, the Plaintiff, and, at the Plaintiff's insistence over the repeated objections of the men (Scott Hughes did not want Kristina Dodd involved) in attendance, Kristina Dodd.

48.     Plaintiff did not deny making the comments to Haynes, but gave them context and asked if they were investigating Haynes for her comments about Plaintiff's body.

49.     On April 25, 2017, Plaintiff was terminated, allegedly for her "sexual harassment" of Erica Haynes.

50.     Scott Hughes claimed in Plaintiff's unemployment hearing that the investigation into Plaintiff was concluded within one day.

51.     Hughes acknowledged that it is highly irregular for a sexual harassment investigation to be resolved within one day, and that he could not recall any other time at

7

Gestamp's South Charleston facility when such a complaint had been resolved within one day.

52.     Plaintiff had previously filed a complaint of sexual harassment against Barry Holstein. Holstein aggressively pursued Hall to engage in a sexual relationship.

53.     Holstein asked Plaintiff out for drinks and dinner, over which he said they could discuss her future opportunities at the plant.

54.     Plaintiff declined this invitation.

55.     Thereafter, Holstein made Plaintiff's time at work unpleasant however he could in retaliation for her rejection of his advances.

56.     Plaintiff complained about this treatment to Nancy Paxton, the HR Department Manager at that time.

57.     Paxton relayed all that Plaintiff had told her to Holstein, causing Holstein to confront Plaintiff about her complaints.

58.     Holstein told the Plaintiff she was not to take her complaints to HR or any higher-ups, and that she must speak to him regarding any further complaints.

59.     After this confrontation, Plaintiff perceived that her initial complaint to Paxton had failed; she then approached Paxton again to ask for aid with Holstein's mistreatment.

60.     Paxton again failed to take action to prevent Plaintiff's harassment by Holstein, causing Plaintiff to take her complaints higher to Paul Lezanic, the plant manager at that time.

8

61.     Lezanic responded to Plaintiff's complaints by saying he worried about her mental health, and that maybe this job wasn't for her.

62.     Plaintiff tried one more time to convince Lezanic to take action to remove her from under Barry Holstein's supervision, and once more Lezanic refused to address the situation.

63.     Plaintiff then tried to reach Gestamp's corporate HR for help with her harassment by Holstein, and they told her to meet with her plant manager to address her issues.

64.     By this time a new plant manager was in charge, Walter Thomas, so Plaintiff met with him and complained of her mistreatment by Holstein due to rejecting Holstein's advances. Thomas told her to write a formal complaint so that HR could do an investigation.

65.     Plaintiff wrote a formal complaint against Holstein, as directed by the plant manager, and submitted it to HR at Gestamp's South Charleston facility. (This complaint was sent directly by email to Scott Hughes and Walter Thomas).

66.     Gestamp's HR department took no action on the complaint, saying that the allegations could not be substantiated. (Again, Scott Hughes)

67.     Holstein's mistreatment of Plaintiff continued, exacerbating her PTSD anxiety, until he resigned to take another position at a different company.

68.     Upon her termination on April 25, Plaintiff was walked out of the plant by Kenneth Suprenant.

9

69.   Erica Haynes was heard telling other employees "you're welcome," as Plaintiff was being led out of the plant. (Haynes was doing this while Plaintiff was being walked out and after her termination – obviously damaging, embarrassing and insulting to plaintiff who was being retaliated against.)

70.   Haynes was promptly promoted to work in launch coordination at Gestamp's South Charleston facility after Plaintiff's termination. She was to work with Aaron Lambert.

71.   Plaintiff was illegally targeted for termination due to her medical leave and issues with PTSD anxiety and her gender, female.

72.   Termination due to Plaintiff's disability and/or gender is a violation of the West Virginia Human Rights Act.

73.   Defendant Gestamp is a limited liability company authorized to do business in the State of West Virginia with its principal place of business in Troy, Michigan.

74.   Defendants Suprenant and/or Hughes are and at all times relevant hereto have been a residents of the State of West Virginia.  Defendant Suprenant and/or Hughes conspired, aided, and abetted Defendant Gestamp in discrimination against Plaintiff based upon disability and gender.

75. Plaintiff reserves right to amend to allege claims for violations of public policy, namely relation for plaintiff's complaints, her taking leave to address medical concerns, complaints of sexual harassment, and violations of the Equal Pay Act.

WHEREFORE, Plaintiff demands against Defendants damages for lost wages, the value of lost benefits, damages for mental and emotional distress, punitive damages,

10

costs and attorney's fees, injunctive relief including but not limited to reinstatement, and

such other and further relief as may upon the premises be appropriate.


**Jury Trial Demanded.**

AMBER D. HALL,
Plaintiff by Counsel,

Respectfully submitted,


D. Adrian Hoosier, II (W. Va. Bar #10013)
Erica Lord (W. Va. Bar #9109)
Lord Hoosier PLLC
225 Hale Street
Charleston, West Virginia  25301
Phone: (304) 345-8030
Fax:  (304) 553-7227
E-Mail:      erica@lordhoosier.com
               adrian@lordhoosier.com