IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| AMBER D. HALL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| GESTAMP WEST VIRGINIA, LLC, BARRY HOLSTEIN, KENNETH SUPRENANT & SCOTT HUGHES, | ) ) ) ) |
| Defendant. | ) ) |

Civil Action No.: 2:20-cv-00146

## AFFIDAVIT OF KRISTINA DODD

**COMES NOW**, Your Plaintiff, Amber D. Hall, by counsel, D. Adrian Hoosier, II, and supplies "Affidavit of Kristina Dodd" to be used as an exhibit in support of Plaintiff's Claims.

1. My name is Kristina Dodd, I am over the age of 18 and of sound body and mind.
2. I worked at Gestamp West Virginia, LLC while Plaintiff Amber Hall was employed, and during her time off on FMLA leave.
3. I was employed at Gestamp while Barry Holstein, Kenneth Suprenant and Scott Hughes worked at Gestamp.
4. I worked in Human Resources at Gestamp West Virginia, LLC. Scott Hughes was my immediate Supervisor during the time Amber Hall was having issues with Barry Holstein and experiencing medical issues. Nancy Paxton was my direct supervisor prior to Scott Hughes assuming Nancy Paxton's position. I, along with Scott Hughes, and Nancy Paxton knew of Amber Hall's medical issues and reasons for FMLA leave. We also knew of her issues with Barry Holstein (she formally complained of the same several times).

1

5. I recall Amber Hall reported to Human Resources several times concerning treatment by superior Barry Holstein and her health concerns.
6. I am aware that Amber Hall filed more than one formal complaint with Human Resources and multiple verbal complaints concerning harassment, unfair treatment, privacy violations and medical concerns.
7. I would have expected that any investigation conducted by the Human Resources department at Gestamp West Virginia, LLC concerning Amber Hall's concerns would have involved questioning me. I was never questioned regarding Amber Hall's concerns would have involved questioning me. I was never questioned regarding Amber Hall's concerns. I was not the decision maker on her complaints. Scott Hughes would have been the person responsible for ensuring a full investigation was conducted concerning Amber Hall's complaints.
8. I observed Scott Hughes and Walther Thomas, while Amber Hall was being removed in an ambulance, make remarks to the effect that they hoped she would not be back. On one occasion I overheard Rusty Mossberger speaking with Antoine Anderson and discussing that they did not want Amber Hall to come back. To my knowledge, the investigation into Amber Hall's complaints did not involve taking formal statements. The investigation, into Amber Hall, consisted of casually asking Barry Holstein if there are any issues. No other employee was questioned.
9. I am familiar with some of the issues Amber Hall experienced at Gestamp West Virginia, LLC. She was working a lot of hours. On two occasions I overheard Barry Holstein yell at Amber Hall.
10. On two occasions I overheard Barry Holstein being verbally abusive to Amber Hall. I could hear him yelling at her and berating her through closed doors – it was that loud.
11. One of Amber Hall's complaints concerned her medical concerns and disability.
12. Any notes from investigations are placed in an investigation file and kept on premises at Gestamp West Virginia, LLC. Amber Hall's full report should be there.
13. Amber Hall left, not once, but twice, in an ambulance from work due to extreme stress and anxiety to the point she could not walk.

14. It appeared to me that Gestamp West Virginia, LLC did not properly track Amber Hall's FMLA hours. Scott Hughes sent a letter stating that her FMLA was expiring. Amber denied receiving it. Scott Hughes claimed that he actually tried to call her.
15. I personally handed Amber Hall a "print out" evidencing that no party at Gestamp West Virginia, LLC even kept track of available FMLA hours during the time she was out of work on FMLA.
16. I personally overheard a conversation between Antoine Anderson and Rusty Mossberger. Antoine Anderson had asked Rusty Mossberger when Amber Hall would be returning to work from FMLA and that Rusty Mossberger had said, "Hopefully never!"
17. I recall Rusty Mossberger came to my office to ask me if I knew when Amber Hall would be returning from FMLA. I stated that I didn't know. Mossberger responded with words to the effect that he (Mossberger) wished he (Mossberger) did know so that they (Gestamp West Virginia, LLC) could hurry up and get rid of Amber Hall.
18. I personally witnessed Amber Hall's meeting with Scott Hughes, Kenneth Suprenant and Rusty Mossberger over the alleged Erica Haynes sexual harassment complaint. I can attest that Gestamp West Virginia, LLC, Mossberger, Suprenant and Hughes only focused only on what allegedly happened with Erica Haynes. Gestamp West Virginia, LLC, Mossberger, Suprenant and Hughes created a story/theme that Amber Hall had committed an extremely egregious violation of the Sexual Harassment policy. Mossberger, Suprenant and hughes refused to consider any sexual harassment complaints by Amber Hall or that Amber Hall was in regard to the Erica Haynes complaint.
19. To my knowledge, Erica Haynes did not complain to Human Recourses regarding Amber Hall's alleged conduct.
20. In the meeting with Amber Hall, Scott Hughes claimed to have witness statements. When Amber asked for them, Scott Hughes did not produce them. Scott Hughes later typed statements and brought individuals in to sign them.

I was in the Human Resources office after the office received word of Amber Hall's Sexual Harassment policy violation. Amber Hall wanted me to stay and be witness to the discussion because she was fearful of Hughes and Suprenant and was concerned that the

pair were looking for a reason to terminate her. Scott Hughes asked me to leave and not be a part of the investigation into the allegations against Amber Hall. I stayed in the meeting at Amber Hall's request.

I can personally state that I witnessed Amber Hall at work. There were no issues with her work attire. She didn't dress sexually inviting. As far as I know, Amber Hall was a very hard working employee often working 7 days a week, and coming in to help even when she wasn't supposed to be there. Amber Hall was very well liked by most employees.

_____  11-19-2020
Kristina Dodd                              Date

STATE OF WEST VIRGINIA,
COUNTY OF KANAWHA, to-wit:

Taken, subscribed and sworn to before me this 19th day of November, 2020.

My Commission expires: March 28, 2022.

_____
Notary Public

SEAL 

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
DEBRA RENEA HOLMES
1800 BIGLEY AVENUE
CHARLESTON, WV 25302
My Commission Expires MARCH 28, 2022