UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

AMBER D. HALL,

      Plaintiff,

v.                              Civil Action No. 2:20-cv-00146

GESTAMP WEST VIRGINIA, LLC,
KENNETH SUPRENANT,
and SCOTT HUGHES,

      Defendants.

MEMORANUDM OPINION AND ORDER

      Pending is the defendants' motion for summary judgment, filed on November 6, 2020 (ECF No. 75).

I.   Background

A.   The complaint

      The plaintiff commenced this action on or about April 18, 2018, by filing a complaint in Kanawha County Circuit Court. See ECF No. 1-1 at 11-20. The complaint alleges the following.

      The plaintiff was employed at a facility of defendant Gestamp West Virginia, LLC ("Gestamp") located in South Charleston, West Virginia, from February 2014 to April 25, 2017. See id. ¶ 1. While at work on December 3, 2016, the plaintiff

suffered an anxiety attack stemming from her post-traumatic stress disorder ("PTSD") and left Gestamp's facility by ambulance.  See id. ¶ 3.  After receiving medical treatment from her healthcare provider, the plaintiff was placed on leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., from December 3 to December 16, 2016.  See id. ¶ 3.  On January 17, 2017, the plaintiff suffered another anxiety attack at work and was placed on FMLA leave from January 17 to March 20, 2017.  See id. ¶¶ 5-6.

The plaintiff alleges that, in January 2017, during her second leave period, she called defendant Scott Hughes, Gestamp's human resources department manager, to inform him that she was uncertain when she would be able to return to work.  See id. ¶ 7.  She alleges that Mr. Hughes informed her that she had three months of FMLA leave to use in 2017.  See id. ¶¶ 8, 13. When the plaintiff called Mr. Hughes again on March 15, 2017, however, he informed her that she had used up all her FMLA leave; denied having told her that she had three months of FMLA leave in 2017; and referenced a letter he had sent her informing her that her FMLA leave had been used up, a letter that the plaintiff says she did not receive until later in the day on March 15, 2017.  See id. ¶¶ 11-15.  In any event, the plaintiff's healthcare provider certified on March 17, 2017,

that she could return to work with no limitations.  See ECF No.
91-6 at 1.  The plaintiff then returned to work on March 20,
2017.  See id. ¶ 16.

     During the plaintiff's absence, her subordinate, team
leader Aaron Lambert, had covered her supervisory duties as a
group leader.  See id. ¶ 17.  Upon returning to work, defendant
Kenneth Suprenant told the plaintiff that her duties as group
leader had not changed despite alterations in the managerial
structure that had occurred during her absence.  See id. ¶ 18.
However, when she returned, the plaintiff alleges that Mr.
Suprenant told her that her desk would remain Mr. Lambert's
until another supervisor approved her return to it and that Mr.
Suprenant treated Mr. Lambert as the plaintiff's superior.  See
id. ¶¶ 20-21, 24.

     On April 11, 2017, the plaintiff was at work speaking
with three of her team leaders when another Gestamp employee,
Erica Haynes, approached the group and joined the conversation.
See id. ¶¶ 26-29.  The plaintiff alleges that, during this
conversation, she and Ms. Haynes "exchang[ed] positive comments
about each others' posteriors," and Ms. Haynes "made a comment
praising [the] [p]laintiff's breasts."  Id. ¶¶ 29-30.  The
plaintiff understood the interaction to be in jest and alleges
the conversation ended without any complaints.  See id. ¶¶ 31-

3

32.

Soon after the conversation, Ms. Haynes submitted to the plaintiff a request for a leave of absence, which the plaintiff denied based on Gestamp's staffing policies.  See id. ¶¶ 33-35.  Ms. Haynes was incensed by the plaintiff's denial. See id. ¶¶ 33, 36.

On Friday, April 21, 2017, Ms. Haynes filed with Gestamp a complaint of sexual harassment against the plaintiff. See id. ¶ 37. The plaintiff alleges that she heard from other Gestamp employees that Mr. Suprenant had "coached" Ms. Haynes to file the complaint.  Id. ¶ 39.  Neither Mr. Suprenant nor other Gestamp supervisors discussed the complaint with the plaintiff until Monday, April 24, 2017, see id. ¶¶ 41-45, and the plaintiff supervised Ms. Haynes during the intervening weekend shift, see id. ¶ 40, 43.

On April 24, 2017, the plaintiff confronted Mr. Suprenant after hearing of the complaint from one of her team leaders, and he moved their conversation to Mr. Hughes' office, where the plaintiff met with Mr. Suprenant, Mr. Hughes, and two other Gestamp employees.  See id. ¶¶ 44-47.  The plaintiff asked whether they were investigating the comments the plaintiff had made to Haynes, did not deny making the comments, and gave them context regarding the conversation in which the comments had

been made.  See id. ¶ 48.  Gestamp terminated the plaintiff's
employment the next day, April 25, 2017, for her sexual
harassment of Ms. Haynes.  See id. ¶ 49.

The plaintiff alleges that, while she worked at
Gestamp, she had filed a complaint of sexual harassment against
her supervisor, Barry Holstein.[1]  See id. ¶ 52.  The plaintiff
states that Mr. Holstein aggressively pursued a sexual
relationship with her and that, after she declined his
invitation to go out for drinks and dinner, he retaliated
against her for rejecting his advances by making her time at
work unpleasant.  See id. ¶¶ 52-55.  The plaintiff alleges that
she twice complained about Mr. Holstein's conduct to the human
resources department manager — at that time, Nancy Paxton — but
that her complaints did not result in any action.  See id. ¶¶
56-60.  She also alleges that she twice took her complaints to
Paul Lezanic, the plant manager at the time, but that these
complaints also resulted in no action.  See id. ¶ 60-62.  When
she later took her complaint to a new plant manager, Walter
Thomas, he directed her to draft a formal complaint so that the
human resources department could investigate.  See id. ¶¶ 63-65.

---

[1]  Mr. Holstein was named as a defendant in the plaintiff's
complaint but was dismissed after the parties jointly stipulated
to his dismissal.  See ECF No. 112; ECF No. 113.

She drafted a formal complaint and provided it to Mr. Hughes in the human resources department.  See id. ¶¶ 65-66.  Mr. Hughes later told her that the allegations in her complaint against Mr. Holstein could not be substantiated, and the human resources department took no action on the complaint.  See id. ¶ 66.

The plaintiff alleges that Gestamp terminated her employment "due to her medical leave," her "disability," and her "gender," in violation of the West Virginia Human Right Act ("WVHRA"), W. Va. Code § 5-11-1 et seq, and that Mr. Suprenant and Mr. Hughes aided and abetted, or conspired with, Gestamp in its discrimination against her based on her disability and gender.  Id. ¶¶ 71-72, 74.

B.   <u>District court proceedings</u>

The parties proceeded with litigation in Kanawha County Circuit Court until the defendants removed the action to this court on February 21, 2020.  See ECF No. 1.  The plaintiff filed motions seeking leave to amend her complaint to assert a number of additional claims.  See ECF No. 19; ECF No. 21; see also ECF No. 27.[2]  In an August 27, 2020 memorandum opinion and

---

[2] In both motions, the plaintiff also asked the court to remand the action to state court, see ECF No. 19; ECF No. 21.  The court had previously denied a separate motion to remand filed by the plaintiff, see ECF No. 5; ECF No. 9, and the court denied

order, the court denied the motions based on undue delay and prejudice to the defendants.  See ECF No. 44.  The court explained, however, that, although "[t]he complaint does not enumerate specific counts or causes of action," id. at 1, "the asserted claims in this case are violations of the [WVHRA] for gender and disability discrimination, and violations of the FMLA for interference with the plaintiff's FMLA rights and for wrongful termination or retaliatory discharge in contravention of the FMLA" and that "[a] claim for failure to accommodate disability may plausibly be understood as a subset of disability discrimination," id. at 11.

The parties proceeded with discovery in this court, and the defendants filed the current motion for summary judgment on November 6, 2020.  See ECF No. 75.  The plaintiff took a kitchen-sink approach to opposing the summary-judgment motion, attaching 35 exhibits to her response brief, see ECF Nos. 91-1 through 91-25; ECF No. 92-1; ECF No. 92-2; ECF Nos. 94-1 through 94-15; ECF No. 95-1, some of which the court has noted are not even cited in the brief, see ECF No. 116, and separately filing seven affidavits from six individuals, which are cited in her response brief, see ECF No. 78; ECF No. 81; ECF No. 83; ECF No.

---

these two subsequent requests as well, see ECF No. 44.

84; ECF No. 85; ECF No. 86; ECF No. 87.

The defendants filed a motion to strike certain portions of the plaintiff's evidentiary submission in support of her opposition to summary judgment. See ECF No. 105. In an April 2, 2021 memorandum opinion and order, the court concluded that it would strike the seven separately-filed affidavits relied upon by the plaintiff. See ECF No. 116 at 7-21, 31-32 (striking ECF No. 78, ECF No. 81, ECF No. 83, ECF No. 84, ECF Nos. 85, ECF No. 86, and ECF No. 87). The court also concluded that, although it would not strike the remaining documents challenged by the defendants' motion, it would not consider three of them (ECF No. 91-15, ECF No. 91-16, and ECF No. 95-1) in deciding the defendants' summary-judgment motion and would only consider the fourth (ECF No. 94-8) to the extent it supported factual assertions that the defendants do not dispute. See id. at 22-32.

The defendants' motion is now fully briefed, and the disputes concerning the evidence that will be considered in deciding the motion have been resolved. The motion is ready for disposition.

## II.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id.</u>  In deciding a motion for summary judgment, the court must view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party.  <u>See</u> <u>Tolan v. Cotton</u>, 572 U.S. 650, 651, 657 (2014) (per curiam).

## III. Discussion

## A.   <u>Disability-discrimination and gender-discrimination claims</u>

Under the WVHRA, it is unlawful for an employer to discriminate against an individual based on the individual's gender or disability with respect to the tenure, terms, conditions, or privilege of employment, so long as the individual is able and competent to perform the services required.  <u>See</u> W. Va. Code. §§ 5-11-3(h), 5-11-9(1).

9

"Discrimination claims brought under the WVHRA are governed by the burden-shifting framework of Title VII of the Civil Rights Act of 1964, laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973)." Bartos v. PDC Energy, Inc., 275 F. Supp. 3d 755, 760 (N.D.W. Va. 2017) (internal citation omitted) (citing Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W. Va. Human Rights Comm'n, 309 S.E.2d 342, 352 (W. Va. 1983)).[3]  Under that framework, a plaintiff bears the initial burden of establishing a prima facie case of employment discrimination.  See id. (citing Conaway v. E. Associated Coal Corp., 358 S.E.2d 423, 430 (W. Va. 1986)); see also Skaggs, 479 S.E.2d at 581.  If the plaintiff establishes a prima facie case, "the burden of production then shifts to the employer to come forward with a legitimate, nondiscriminatory reason for its actions."  Skaggs, 479 S.E.2d at 582; see also Bartos, 275 F. Supp. 3d at 760.  If the employer meets this burden of production, the burden shifts "once again [to] the employee to prove that the proffered legitimate reason is a mere

_____

[3] A plaintiff may also proceed by providing direct proof of discriminatory animus.  See Woods v. Jefferds Corp., 824 S.E.2d 539, 547 (W. Va. 2019) (citing Skaggs v. Elk Run Coal Co., 479 S.E.2d 561, 581 (W. Va. 1996)).  The plaintiff here does not appear to proceed under the direct method of proof.  See id. 547 & n.8 (noting that direct proof is rare because employers no longer announce that they are acting with discriminatory intent) (citing Skaggs, 479 S.E.2d at 582 & n.21).

pretext rather than the true reason for the challenged employment action." Skaggs, 479 S.E.2d at 582; see also Bartos, 275 F. Supp. 3d at 761.

### 1. Disability-discrimination claim

a. Prima facie case. The defendants argue that the plaintiff has failed to establish a prima facie case of disability discrimination. A plaintiff establishes a prima facie case of disability discrimination by showing "that [s]he (1) is a . . . person with a disability, (2) is qualified to perform the essential function of the job, (3) and . . . has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises." Marincil v. Saminco, Inc., 662 F. Supp. 2d 577, 581 (S.D.W. Va. 2009) (citing Skaggs, 479 S.E.2d at 581 n.22).

The defendants first argues that the plaintiff has not shown that she has a disability within the meaning of WVHRA. Although the defendants note that the plaintiff alleges that she suffers from anxiety and PTSD, they argue she has failed to present evidence showing that these conditions meet the WVHRA's definition of disability. See ECF No. 76 at 7-8, 13-14, 16 n.5; see also ECF No. 97 at 16. Under the WVHRA, a disability is defined as "(1) [a] mental or physical impairment which

substantially limits one or more of such person's major life activities[,] . . . includ[ing] functions such as . . . working," "(2) [a] record of such impairment," or "(3) [b]eing regarded as having such an impairment."  W. Va. Code § 5-11-3(m).

Although the plaintiff cites evidence demonstrating that she suffered anxiety attacks at work, one of which required her to be removed from the workplace by ambulance, and that her healthcare provider ordered her to take a medical leave of absence from work to treat anxiety stemming from PTSD, see ECF No. 90 at 6, she presents no argument that this evidence demonstrates that she is disabled under any of the three definitions provided by the WVHRA.  Instead, she simply asserts that "[i]t cannot be disputed" that she has a disability.  Id. at 28.

The court concludes that the plaintiff has failed to establish the disability element of her prima facie case. Although PTSD can in some circumstances constitute an impairment that substantially limits a major life activity, and thus meet the first definition of disability under § 5-11-3(m), see Peaslee v. Citizens Conservation Corp., Inc., No. 5:16-cv-11133, 2018 WL 296004, at *5-6 (S.D.W. Va. Jan. 4, 2018), the burden is on the plaintiff to show – by evidence and argument – that her

PTSD substantially limits a major life activity or that she is disabled under the other definitions in § 5-11-3(m).  The plaintiff has not attempted to make that showing here, and the court cannot do the legwork for her.  See Clayton v. Nationwide Mut. Ins. Co., 260 F. Supp. 3d 514, 521 (D.S.C. 2017) ("The court has no obligation to fashion arguments for a party or to further develop a party's argument when it is wholly conclusory, unexplained, and unadorned with citation to legal authority[,] . . . [for, by] do[ing] so, the court edges into the impermissible advocatory role of argument-creator.").

    b. Pretext.  Even if the plaintiff had met her burden to establish a prima facie case of disability discrimination, the court agrees with the defendants that the plaintiff has not met her burden to show that the defendants' proffered reason for the plaintiff's termination – that she violated Gestamp's sexual-harassment policy[4] – was pretextual.

    First, the plaintiff attempts to show pretext by arguing that the defendants relied on an innocuous incident to drum up allegations of sexual harassment against her.  See ECF No. 9-10, 34-35.  For instance, she cites her own deposition

_____

[4] The plaintiff does not argue that the defendants have failed to meet their burden to proffer a legitimate and non-discriminatory reason for her termination.  She instead argues that their proffered reason was pretextual.

testimony discussing the incident to demonstrate that the comment she made to Ms. Haynes was "mild" and that Ms. Haynes had made similar comments to her during the conversation.[5]  ECF No. 90 (citing ECF No. 75-2 at 18).  However, when assessing whether an employer's reason for an adverse action was pretextual, the issue is whether the decisionmaker "honestly believed" that the employee deserved to be discharged for the proffered reason.  See Holland v. Washington Homes, Inc., 487 F.3d 208, 217-18 (4th Cir. 2007); see also Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 246 (1st Cir. 2006) ("In assessing pretext, a court's focus must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible." (internal quotation marks omitted)).  As

---

[5] In the plaintiff's version of the incident, while she was conversing with a group of co-workers, one of them commented that she "was looking really good after [having] come back from FMLA [leave]." ECF No. 75-2 at 18.  The plaintiff responded with a self-deprecating remark about her "butt," causing the group to laugh.  Id.  At that moment, Ms. Haynes "walked up" and asked "what was funny."  Id.  When the plaintiff relayed her remark again, Ms. Haynes "looked around at" the plaintiff and told her "there was nothing wrong with her."  Id.  The plaintiff responded, "'Well, maybe one day I'll have a butt like yours.'" Id.  In reply, Ms. Haynes "popped her butt out," "started rubbing it," and said, "'I know it's nice.  I ride horses to keep in shape."  Id.  Ms. Haynes further commented, "'But if I had boobs like yours, I would have it made.'"  Id.  The conversation ended soon afterward.  See id.  The plaintiff acknowledges, however, that the foregoing is not exactly the version of the incident that she reported to the human resources department investigators.  See id.

the defendants point out, unrebutted evidence shows that Mr.
Hughes and another Gestamp supervisor, Rusty Mossberger, the
decisionmakers in this instance, credited the version of events
presented by Ms. Haynes – who described the plaintiff's conduct
as more egregious and reported that she did not make the
reciprocal comments alleged by the plaintiff[6] – because Ms.
Haynes' version was corroborated by the conversation's other
participants.  See ECF No. 76 at 11-13 (citing ECF No. 75-6 ¶¶
18, 20, 21; id. at 48; ECF No. 75-7 ¶¶ 8, 10; id. at 9; ECF No.
75-8 ¶¶ 7, 8; ECF No. 75-14 ¶¶ 9, 10; ECF No. 75-15 ¶ 4, 6; ECF
No. 75-18 at 15, 17-18, 22-23).  The plaintiff does not argue,
or point to any evidence demonstrating, that Mr. Hughes and Mr.
Mossberger did not honestly believe Ms. Haynes' version of the
incident and that the plaintiff should be discharged for the
incident.  See Holland, 487 F.3d at 217 (explaining that the
plaintiff failed to demonstrate that his employer's decision to

---

[6] In Ms. Haynes' version of the incident, the plaintiff "came up
to [her] and told [her] that [Ms. Haynes] had a nice butt" and
"that she wish[ed] that she had [Ms. Haynes'] butt."  ECF No. 14
¶ 6, 9.  "Right after she ma[de] the comment," "the plaintiff
also "strok[ed] [Ms. Haynes'] hair."  Id.  The plaintiff had
stroked Ms. Haynes' hair on at least three earlier occasions,
and Ms. Haynes had previously asked her to not do it again.  Id.
¶¶ 3, 5-6.  Although the plaintiff's comment "made [Ms. Haynes]
uncomfortable," she "responded that [she] rides horses to keep
in shape."  Id. ¶ 6.  Ms. Haynes says she never "made [a]
comment to [the plaintiff] regarding her chest" or "ma[d]e any
comments about the plaintiff's anatomy."  Id. ¶ 10.

discharge him was pretextual because "the uncontested evidence
established that . . . []the decisionmaker[] honestly believed
that [the plaintiff] deserved to be discharged for threatening
[his supervisor], regardless of whether [the plaintiff] did in
fact issue the threats").

Similarly, the plaintiff argues that the real reason
Ms. Haynes reported the incident was because the plaintiff had
earlier denied Ms. Haynes' request for leave.  See ECF No. 90 at
10, 34.  The plaintiff fails to explain, however, how any
ulterior motives on the part of Ms. Haynes – who had no role in
deciding whether to terminate the plaintiff's employment –
demonstrates that Mr. Hughes and Mr. Mossberger – the
decisionmakers in this case – did not honestly believe that the
plaintiff engaged in the conduct that they determined merited
her termination.

The plaintiff further points to evidence that she
claims shows Mr. Suprenant "talked [Ms. Haynes] into going to
[the human resource department] to file the complaint against
[the plaintiff]" and that Mr. Hughes drafted statements
regarding the incident, which Ms. Haynes later signed.  ECF No.
90 at 35.  The evidence that the plaintiff relies on, however,
shows that, although Mr. Suprenant approached Ms. Haynes because
she appeared to be in an emotional state, she did not report the

16

incident to him at that time.  See ECF no. 75-14 ¶ 7.  Instead, several days later, Ms. Haynes approached Mr. Suprenant to report the incident, and Mr. Suprenant told her she should discuss the incident with the human resources department and "walked [her] to [Mr.] Hughes' office."  Id. ¶ 8; see also id. ¶ 12.  The evidence also shows that Mr. Hughes drafted short memoranda describing his two interviews with Ms. Haynes and that Ms. Haynes "read" and "signed" them because "[t]he information in [them] is true and correct to the best of [her] knowledge." Id. ¶ 11; see also id. at 6-7.  To the extent the plaintiff argues this evidence shows that Mr. Suprenant and Mr. Hughes contrived to bring a sexual-harassment claim against her, it is not reasonable to infer such contrivance from the evidence presented.  More importantly, the plaintiff fails to explain how the facts that Mr. Suprenant encouraged Ms. Haynes to report the incident or that Mr. Hughes drafted interview memoranda for Ms. Haynes to review and sign show that the decisionmakers here did not honestly believe Ms. Haynes' account of the incident or that the plaintiff's conduct warranted termination.

Second, the plaintiff attempts to show pretext by arguing that Gestamp rarely enforced its sexual-harassment policy and thus that its decision to do so in her case was a ruse to conceal the discriminatory reasons for her termination.

To demonstrate that Gestamp rarely enforced its policy, the plaintiff relies chiefly on affidavits from individuals who attest to alleged violations of the policy that they claim Gestamp did not investigate or otherwise address.  See ECF No. 90 at 12-25, 35 (citing ECF No. 78; ECF No. 83; ECF No. 84; ECF No. 85; ECF No. 86; ECF No. 87).  She also relies on a complaint filed in state court against Gestamp by another former employee.  See id. at 21-22 (citing ECF No. 95-1).  In its April 2, 2021 memorandum opinion and order, the court determined that it would strike the affidavits and disregard the complaint on which the plaintiff relies.  See ECF No. 116.  Accordingly, the court will not consider these documents in assessing whether the plaintiff has presented evidence sufficient to create a genuine dispute regarding Gestamp's enforcement of its sexual-harassment policy.

Aside from the affidavits and state-court complaint that the court will not consider, the plaintiff relies on her own deposition testimony regarding complaints against three other Gestamp employees, namely, Bill Hardman, Mark Chandler, and Mr. Holstein.  See ECF No. 90 at 12; see also id. at 3-5, 7. With respect to the complaints against Mr. Hardman and Mr. Chandler, the plaintiff testified that she or other employees complained about being sexually harassed by them, that Ms. Paxton, the human resources department manager at the time,

18

investigated the complaints, and that Ms. Paxton's investigations did not result in termination of their employment. See ECF No. 75-1 at 19-20. As the defendants point out, however, these complaints were made before Mr. Hughes became the human resources department manager, see ECF No. 75-6 ¶¶ 1, 11, and there is no evidence that either Mr. Hughes or Mr. Mossberger, the decisionmakers in this case, were aware of the complaints.

The plaintiff's arguments regarding non-enforcement of Gestamp's sexual-harassment policy against other employees calls to attention the use of comparator evidence in employment discrimination cases. Ever since the emergence of the indirect method of proof outlined by McDonnell Douglas, "federal courts now routinely rely on comparator evidence when deciding whether an adverse employment action was driven by a discriminatory motive," in large part because "the task of identifying whether an employer has treated more favorably a person who is situated similarly to the plaintiff (but for the characteristic at issue) is a relatively straightforward and manageable inquiry." Laing v. Fed. Express Corp., 703 F.3d 713, 719-20 (4th Cir. 2013). However, "[d]isputes abound as to who is a valid comparator and who is not." Id. at 720. "[T]o establish a valid comparator, the plaintiff must produce evidence that the plaintiff and

comparator dealt with the same supervisor, were subject to the same standards[,] and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Haynes v. Waste Connections, Inc., 922 F.3d 219, 223-24 (4th Cir. 2019) (internal quotation marks, brackets, and ellipsis omitted) (quoting ultimately Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).  "Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, . . . 'the similarity between comparators must be clearly established in order to be meaningful.'" Swaso v. Onslow Cty. Bd. of Educ., 698 F. App'x 745, 748 (4th Cir. 2017) (internal brackets and ellipsis omitted) (quoting Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir. 2008)).

          Decisions from the West Virginia Supreme Court of Appeals appear to be consistent with federal law regarding reliance on comparator evidence. See, e.g., Syl. pt. 2, State ex rel. W. Va. Human Rights Comm'n v. Logan-Mingo Area Mental Health Agency, Inc., 329 S.E.2d 77, 79 (W. Va. 1985).  And, federal district courts have used the same analysis in assessing WVHRA employment discrimination claims. See Wright v. Int'l Ass'n of Sheet, Metal, Air, Rail & Transp. Workers Local Union

No. 33, No. 2:19-cv-00753, 2020 WL 2751897, at *3-4 (S.D.W. Va. May 27, 2020); Lasure v. Sam's E., Inc., No. 1:14CV127, 2015 WL 8664280, at *4 n.6, 6-9 (N.D.W. Va. Dec. 11, 2015); see also Barefoot v. Sundale Nursing Home, 457 S.E.2d 152, 159 (W. Va. 1995) (noting that the Supreme Court of Appeals has "consistently held that cases brought under the West Virginia Human Rights Act are governed by the same analytical framework and structures developed under Title VII" (internal citation omitted)).

To demonstrate pretext by pointing to Gestamp's unequal enforcement of the sexual-harassment policy, the plaintiff must show that the decisionmaker who enforced the policy against her was aware of others violating the same policy and did not enforce the policy against them to the same extent. See Opsatnick v. Norfolk S. Corp., 335 F. App'x 220, 222-23 (3d Cir. 2009); Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989); Duggan v. Sisters of Charity of Providence Hosp., 663 F. Supp. 2d 456, 469-70 (D.S.C. 2009).  Here, the plaintiff has failed to show either that Mr. Hughes and Mr. Mossberger, the decisionmakers who enforced Gestamp's sexual-harassment policy against her, were aware of Mr. Hardman's and Mr. Chandler's alleged misconduct or that they had any role in deciding to treat Mr. Hardman and Mr. Chandler more favorably than they

treated the plaintiff.  Accordingly, Mr. Hardman and Mr.
Chandler are inapt comparators for purposes of demonstrating
pretext.  See Forrest v. Transit Mgmt. of Charlotte, Inc., 245
F. App'x 255, 257 (4th Cir. 2007) ("If different decision-makers
are involved, employees are generally not similarly situated.").

        As for Mr. Holstein, the plaintiff points to evidence
of numerous instances of what she views as his mistreatment of
her while he was her direct supervisor.  See ECF No. 90 at 3-5,
7, 12.  Although the plaintiff notes that she brought her
complaints to several Gestamp supervisors, including two plant
managers, she offers no indication of Mr. Hughes' or Mr.
Mossberger's involvement in investigating her complaints or in
determining how Mr. Holstein should be treated.  See id. at 3-5,
7.  Although the plaintiff argues that she complained that Mr.
Holstein had sexually harassed her, she does not identify who
this complaint was made to.  See id. at 12.

        The defendants, on the other hand, present unrebutted
evidence that Mr. Hughes became involved with the plaintiff's
complaints against Mr. Holstein only when the plaintiff provided
Mr. Hughes with three written complaints between October 26 and
November 3, 2016.[7]  See ECF No. 76 at 5-6 (citing ECF No. 75-1 at

---

[7] Mr. Mossberger apparently had no involvement with the
plaintiff's complaints against Mr. Holstein.

22

31-32, 36, 161-66, 176-81; ECF No. 75-6 ¶ 13; ECF No. 75-10 ¶ 8).   Mr. Hughes states in his affidavit that the written complaints he received from the plaintiff did not allege that Mr. Holstein had sexually harassed her, see ECF No. 75-6 ¶ 13.d, and that they largely concerned "general workplace dissatisfaction," ECF No. 75-18 at 18; see also id. at 29.   The defendants point to unrebutted evidence that Mr. Hughes investigated the plaintiff's complaints by interviewing at least nine employees whom the plaintiff had identified, none of whom, he determined, corroborated the plaintiff's allegations.   See ECF No. 76 at 7 (citing ECF No. 75-6 ¶ 13; EFC No. 75-9 ¶ 14; ECF No. 75-10 ¶ 9).   Mr. Hughes therefore concluded that the plaintiff's complaints were unsubstantiated, and Gestamp took no action against Mr. Holstein.   See ECF No. 75-6 ¶ 13; ECF No. 75-10 ¶ 9.

       The court concludes that the plaintiff has failed to demonstrate pretext based on her complaints against Mr. Holstein.   As the defendants argue, the plaintiff has failed to point to evidence that she complained to Mr. Hughes that Mr. Holstein had sexually harassed her, and Mr. Hughes has testified that the complaints he received from the plaintiff, as he understood them, did not contain allegations of sexual harassment.   See Drummond v. Stackley, 687 F. App'x 277, 278

(4th Cir. 2017) (rejecting argument that employer's proffered reasons for selecting comparator, rather than the plaintiff, for promotion must have been pretextual based on the plaintiff's view that employer "could not have believed the [comparator] was more qualified than [the plaintiff]" when the plaintiff "offered no evidence undermining the decision makers' perception of the [comparator] as compared to [the plaintiff]").  Thus, Mr. Holstein cannot serve as an apt comparator because there is no evidence that Mr. Hughes was aware that Mr. Holstein had been accused of violating, let alone that he had violated, the same policy enforced against the plaintiff.  See Opsatnick, 335 F. App'x at 222-23; Jones, 874 F.2d at 1541; Duggan, 663 F. Supp. 2d at 469-70.  And, as the defendants further argue, Mr. Holstein is also an inapt comparator because, unlike the complaint against the plaintiff, the allegations in the complaints against Mr. Holstein were not corroborated by other employees who Mr. Hughes interviewed.  See Doke v. PPG Indus., Inc., 118 F. App'x 366, 369 (10th Cir. 2004) (explaining that "[d]ifferential treatment" of an employee for whom allegations of misconduct are substantiated as compared to employees for whom allegations of the same misconduct are not substantiated "is not evidence of pretext"); Duggan, 663 F. Supp. 2d at 463 ("A plaintiff charging an employer with disparate discipline must show the decisionmaker consciously overlooked misconduct by

24

others outside the protected class when he disciplined [the] plaintiff more severely." (internal quotation marks and brackets omitted)).

Because the plaintiff has failed to adduce sufficient evidence to establish a <u>prima facie</u> case of disability discrimination and to demonstrate that the defendants' legitimate, non-discriminatory reasons for terminating her employment was pretextual, the defendants are entitled to summary judgment on her disability-discrimination claim.

### 2. Gender-discrimination claim

To establish a <u>prima facie</u> case of gender discrimination under the WVHRA, a plaintiff must show that (1) "she is a member of a protected class," (2) "the employer made an adverse decision concerning her," and (3) "but for the plaintiff's protected status, the adverse decision would not have been made." <u>Blankenship v. Caterpillar Global Mining, LLC</u>, 964 F. Supp. 2d 578, 585 (N.D.W. Va. 2013). The defendants argue that the plaintiff has not provided evidence that can establish the third element of her <u>prima facie</u> case, <u>i.e.</u>, "evidence which would sufficiently link [Gestamp]'s decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based

on" her gender.  Conaway, 358 S.E.2d at 429-30.

In response, the plaintiff argues that she was terminated for violation of a sexual-harassment policy, "when [that policy] was ignored for men."  ECF No. 90 at 28; see also id. at 35 ("Gestamp had a pattern of favoring men over women when it came to sexual harassment [violations].").  Thus, the only evidence that the plaintiff relies on to demonstrate that her gender was a but-for cause of her termination is evidence that the sexual-harassment policy enforced against her was not enforced against men.  See Conaway, 358 S.E.2d at 429-30 (explaining that evidence of causation "could . . . come in the form of a case of unequal or disparate treatment between members of the protected class and others" or "by the elimination of the apparent legitimate reasons for the decision").

To demonstrate that Gestamp enforced its sexual-harassment policy against her but not against men, the plaintiff points to examples of male employees engaging in sexual harassment without being disciplined as attested to in the stricken affidavits, the state-court complaint, and the plaintiff's own deposition testimony.  See ECF No. 90 at 35.  The court will not consider the examples provided in the stricken affidavits or in the state-court complaint.  With respect to the plaintiff's deposition testimony regarding sexual

harassment committed by Mr. Hardman, Mr. Chandler, and Mr. Holstein, the court concludes, for the reasons set forth previously, that none of them are comparators that can demonstrate disparate treatment based on gender.  See <u>Duggan</u>, 663 F. Supp. 2d at 468 ("To be similarly situated and thus permit a valid comparison, the []male employees must have dealt with the same supervisor[] . . . and have engaged in the same conduct without mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."). Thus, the court concludes that the plaintiff has failed to establish a <u>prima facie</u> case of gender discrimination.

Even assuming that the plaintiff had established her <u>prima facie</u> case, the court concludes, for the reasons expressed previously, that the plaintiff has failed to demonstrate that the defendants' legitimate, non-discriminatory reason for terminating her employment was pretextual.  Accordingly, the defendants are entitled to summary judgment on the plaintiff's gender-discrimination claim.

## B.  <u>Failure-to-accommodate claim</u>

"Under West Virginia caselaw[,] [a failure-to-accommodate claim] is generally treated as a separate cause of action with a different test than that used for a general

[disability-]discrimination claim." <u>Dawson v. Kokosing Constr.</u>
<u>Co., Inc.</u>, No. 3:08-0287, 2009 WL 1176447, at *8 n.7 (S.D.W. Va.
Apr. 29, 2009) (citing <u>Skaggs</u>, 479 S.E.2d 561).[8]  A plaintiff
pursuing a standalone failure-to-accommodate claim under the
WVHRA must prove: "(1) [t]he plaintiff is a qualified person
with a disability; (2) the employer was aware of the plaintiff's
disability; (3) the plaintiff required an accommodation in order
to perform the essential functions of a job; (4) a reasonable
accommodation existed that met the plaintiff's needs; (5) the
employer knew or should have known of the plaintiff's need and
of the accommodation; and (6) the employer failed to provide the
accommodation." <u>Alley v. Charleston Area Med. Ctr., Inc.</u>, 602
S.E.2d 506, 514 (W. Va. 2004) (quoting Syl. pt. 2, <u>Skaggs</u>, 479

---

[8] An allegation that an employer failed to accommodate an
employee's disability may also be understood as an adverse
action forming one of the elements of a general disability-
discrimination claim.  <u>See</u> <u>Dawson</u>, 2009 WL 1176447, at *8 n.7.
In their briefing, the defendants argue that the court should
summarily dismiss the plaintiff's failure-to-accommodate claim
because she failed to sufficiently allege any such claim in her
complaint.  <u>See</u> ECF No. 76 at 15; ECF No. 97 at 16-17.  The
court agrees that dismissal may well be appropriate on this
ground because, as the court has previously noted, "[a]ny
ambiguity or uncertainty in the [plaintiff's] claims arises from
[the] plaintiff's poorly-constructed complaint."  ECF No. 44 at
11.  Nevertheless, because the plaintiff's briefing treats the
defendants' alleged failure to accommodate her alleged
disability as a standalone claim, <u>see</u> ECF No. 90 at 1, and
because West Virginia law provides for a separate cause of
action, the court addresses it herein as a separate claim.

S.E.2d at 568).

The defendants argue that the plaintiff failed to present evidence supporting her failure-to-accommodate claim. The court agrees.  As discussed previously, the plaintiff has failed to present evidence or argument that she has a disability within the meaning of the WVHRA, and the court will not do the legwork for her.  See Clayton, 260 F. Supp. 3d at 521.  For this reason, the plaintiff cannot meet the first element of her failure-to-accommodate claim, and summary judgment is appropriate.

Further, the court concludes that the plaintiff has failed to show that she has adduced evidence for the remaining elements of her failure-to-accommodate claim.  The plaintiff seems to premise the claim on the pressure she felt to return to work following her two anxiety attacks.  See ECF No. 90 at 8 (explaining that, based on Mr. Hughes' communications with her, the plaintiff "was forced to get her provide[r] to allow her to return [to work] on March 17, 2017[,] or face certain termination"); see id. at 29 (using identical language).  In explaining how this pressure amounted to a failure to accommodate her disability, however, the plaintiff offers only the following argument:  "[The plaintiff] was denied an accommodation as it was clear that her physician had stated in

the FMLA documentation that [the plaintiff] would experience
flare ups [of her PTSD symptoms,] and it would be medically
necessary for [her] to be absent from work during the flare-
ups." ECF No. 90 at 8; see also id. 29 (using identical
language); id. at 28 (asserting that there remains a genuine
dispute whether the "[d]efendant fail[ed] to accommodate [her
alleged disability] when [her] FMLA documents indicated she was
to receive time off when needed"). No further explanation or
argument is provided.

        The plaintiff's one-sentence argument is insufficient
to meet her burden at this stage. Neither her brief recitation
of the facts surrounding her return to work in March 2017, nor
her facially insufficient argument clarify, for instance, what
the essential functions of her job were, what accommodation the
plaintiff claims was required for her to perform those
functions, whether that accommodation was reasonable and
available, and whether Gestamp was aware of such an
accommodation. The court will not sift through the evidence in
order to develop arguments in this vein on the plaintiff's
behalf. See Clayton, 260 F. Supp. 3d at 521. Because the
plaintiff has failed to present evidence to support her failure-
to-accommodate claim, the defendants are entitled to summary
judgment on that claim.

C.   <u>FMLA-interference claim</u>

"The FMLA provides that 'it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.'"   <u>Sharif v. United Airlines, Inc.</u>, 841 F.3d 199, 203 (4th Cir. 2016) (quoting 29 U.S.C. § 2615(a)(1).   "To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled." <u>Rodriguez v. Smithfield Packing Co., Inc.</u>, 545 F. Supp. 2d 508, 516 (D. Md. 2008); <u>accord</u> <u>Propst v. HWS Co., Inc.</u>, 148 F. Supp. 3d 506, 539 (W.D.N.C. 2015); <u>Chadwell v. Brewer</u>, 59 F. Supp. 3d 756, 766 (W.D. Va. 2014).

Further, "[i]n order to establish a claim for interference with the exercise of FMLA rights, [the plaintiff] must prove not only the fact of interference, but also that the violation prejudiced her in some way." <u>Ranade v. BT Ams., Inc.</u>, 581 F. App'x 182, 184 (4th Cir. 2014) (citing <u>Ragsdale v. Wolverine World Wide, Inc.</u>, 535 U.S. 81, 89 (2002)).   "Such prejudice can be proven by showing that she lost compensation or

benefits by reason of the violation, sustained other monetary losses as a direct result of the violation, or suffered some loss in employment status remediable through appropriate equitable relief, such as employment, reinstatement, or promotion." Id. (internal quotation marks and citations omitted).

In support of her FMLA claim, the plaintiff argues that Mr. Hughes undercalculated the leave to which she was entitled under the FMLA. See ECF No. 90 at 8 & n.1, 36. Specifically, the plaintiff asserts that Gestamp was required to calculate the plaintiff's leave based on the average number of hours she worked per week, which far exceeded the 40-hour workweek that Mr. Hughes used to calculate the plaintiff's leave. See id. (citing ECF No. 91-7; ECF No. 91-10). Based on his miscalculation, the plaintiff argues, Mr. Hughes incorrectly informed her that her FMLA leave had been used up by March 17, 2020, causing her to obtain a return-to-work authorization from her healthcare provider so that she could return to work on March 20, 2017. See id. at 7-8, 36-37 (citing ECF No. 75-2 at 6; ECF No. 91-6; ECF No. 91-7).

The defendant argues that the plaintiff has failed to adduce evidence that she was entitled to any FMLA leave, or that the defendants denied her any FMLA leave to which she was

entitled, after she obtained her return-to-work authorization
from her healthcare provider.  The court agrees.  The
plaintiff's claim is based on her assertion that Mr. Hughes'
miscalculation of her FMLA leave time caused her to return to
work on March 20, 2017, even though she remained eligible to
remain on FMLA leave for roughly another month.  However, the
plaintiff's healthcare provider certified that she could return
to work with no limitations on March 17, 2017, see ECF No. 91-6
at 1, and the plaintiff has advanced no evidence suggesting she
remained eligible for FMLA leave beyond that date.  See Pivac v.
Component Servs, & Logistics, Inc., 570 F. App'x 899, 903 (11th
Cir. 2014) (concluding, in the context of an FMLA-interference
claim, that an employee was ineligible for FMLA leave in part
because her doctor had returned her to work without
restrictions); Mayland v. St. Joseph Med. Ctr., No. Civ. JFM-00-
2981, 2001 WL 708815, at *1 (D. Md. June 11, 2001) (granting
summary judgment on FMLA-interference claim "[i]n the absence of
any evidence that any doctor thought [the plaintiff] was not fit
to return to work" during the period for which a right to leave
was alleged (citing 29 U.S.C. § 2612(a)(1)(D))); Dodgens v. Kent
Mfg. Co., 955 F. Supp. 560, 564-65 (D.S.C. 1997) (granting
summary judgment on FMLA-interference claim when "it is
undisputed that [the plaintiff] was permitted to take leave
until being certified to return to work without restrictions by

his doctor").[9]

Further, the court concludes that the plaintiff has failed to present evidence showing that she was prejudiced in some way by the alleged violation.  See Ranade, 581 F. App'x at 184.  The defendants point out that there is no dispute that the plaintiff returned to the same position, along with the same compensation and benefits, she held before taking leave.  See ECF No. 76 at 22-23.  In response, the plaintiff argues only that she "was prejudiced [because] she failed to receive full FMLA benefits."  ECF No. 90 at 36.  This conclusory argument misses the mark.  The plaintiff has not identified any "lost compensation or benefits" or "other monetary losses" stemming from the alleged violation.  Ranade, 581 F. App'x at 184.  Nor has she identified any "loss in employment status remediable through appropriate equitable relief."  Id.  Rather, she argues that she should have been accorded a longer leave period, an argument that the court has already rejected and that, in any event, does not present the kind of prejudice required to sustain an FMLA-interference claim.  See id.

_____

[9] The court notes in this regard that the plaintiff acknowledged that she was planning on asking her healthcare provider for return-to-work authorization before she was aware that Mr. Hughes had determined that her FMLA leave had been used up.  See ECF No. 75-2 at 6.

Because the plaintiff has failed to present evidence
that she was denied FMLA leave to which she was entitled or that
the defendants' alleged interference in the exercise of her FMLA
rights resulted in cognizable prejudice, the defendants are
entitled to summary judgment on the plaintiff's FMLA-
interference claim.

D.   **FMLA-retaliation claim**

"The FMLA prohibits employers from discriminating
against an employee for exercising her FMLA rights."  Hannah P.
v. Coats, 916 F.3d 327, 347 (4th Cir. 2019) (citing 29 U.S.C. §
2615(a)(2)).  "Courts analyze FMLA retaliation claims . . .
under the McDonnell Douglas burden-shifting framework."[10]  Id.
"The McDonnell Douglas framework requires the plaintiff first to
establish a prima facie case of FMLA retaliation by proving
three elements: (1) 'the plaintiff engaged in a protected
activity; (2) her employer took an adverse employment action
against her; and (3) there was a causal link between the two
events."''  Fry, 964 F.3d at 244-45 (brackets omitted) (quoting
Hannah P., 916 F.3d at 347).  "Then, the burden shifts to the

_____

[10] A plaintiff pursuing an FMLA-retaliation claim may also
proceed under the direct method of proof, see Fry v. Rand
Constr. Corp., 964 F.3d 239, 244 (4th Cir. 2020).  The plaintiff
here, however, appears to proceed under the indirect method,
applying the burden-shifting framework.  See ECF No. 90 at 37.

defendant to produce 'a legitimate, nonretaliatory reason for taking the employment action at issue.'"  Id. at 245 (quoting Hannah P., 916 F.3d at 347).  "Lastly, the plaintiff is given a chance to prove that the employer's explanation was false and a pretext for retaliation."  Id.

Here, the plaintiff argues, in a single sentence, that she "engage[d] in protected activity" by "[]taking and/or requesting . . . FMLA leave[]"; that Gestamp "took adverse action against her" by "[]fail[ing] to allow [her] all [her] benefits," "terminat[ing] her [employment]," and "retaliat[ing] against her for requesting FMLA leave"; and that these "adverse action[s] [were] ca[us]ally connected to [her] protected activity."  ECF No. 90 at 37.  In the next sentence, the plaintiff argues that the "[d]efendants['] explanation" for its actions, "if any, is pretext for FMLA retaliation."  Id.  In support of this argument, the plaintiff appears to rely only on her view that the comment she made to Ms. Haynes was an "extremely weak reason for her termination."  Id. at 38.

The defendant argues that the plaintiff has failed to present evidence showing a causal connection between her requesting and taking FMLA leave and Gestamp's decision to terminate her employment.  The court agrees.  The plaintiff provides only the conclusory argument that a causal connection

exists, without providing any further explanation or citing any evidence.  A single-sentence argument unadorned by citation to the record or relevant legal authority is not sufficient to establish the requisite prima facie case at this stage.  See Clayton, 260 F. Supp. 3d at 521.

The defendants also argue that they have presented a legitimate, non-discriminatory reason for terminating the plaintiff's employment – her violation of Gestamp's sexual-harassment policy – and that the plaintiff has failed to present evidence that the proffered reason was pretextual.  The court once again agrees.  The plaintiff presents a conclusory single-sentence argument and fails to meaningfully address the evidence in the record or to support her argument with citation to legal authority.  This is again insufficient to demonstrate pretext. See id.  And, to the extent the plaintiff relies on her arguments regarding pretext addressed to other claims, the court, for the reasons expressed earlier, concludes that she has failed to demonstrate pretext.

Accordingly, the defendants are entitled to summary judgment on the plaintiff's FMLA-retaliation claim.

IV.   Conclusion

For the foregoing reasons, it is ORDERED that the defendants' motion for summary judgment (ECF No. 75) be, and hereby it is, granted.  It is further ORDERED that this action be, and hereby it is, dismissed.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: August 11, 2021

John T. Copenhaver, Jr.
Senior United States District Judge

38